Shaw v. Tracy.

SHAW *et al., Plaintiffs in Error,* v. TRACY *et al.*

**Fraud:** VOLUNTARY CONVEYANCE. A voluntary conveyance of land made with a fraudulent intent is void as to creditors and purchasers both prior and subsequent, and this is true, although the grantee in such voluntary conveyance was ignorant of the fraudulent purpose of the grantor.

*Appeal from Saline Circuit Court.*—HON. W. T. WOOD, Judge.

AFFIRMED.

*Samuel Boyd* for plaintiff in error.

The deed from Charles Lewis and wife to Sally G. Lewis was a valid one as to the parties thereto and so far as Henry B. Lewis was concerned, even though void as to the existing creditors of the latter. *Henderson v. Henderson,* 13 Mo. 151; *McLaughlin v. McLaughlin,*

16 Mo. 249; *Reid v. Mullins*, 48 Mo. 344; *Hall v. Calla-
han*, 66 Mo. 323. The deed of trust from Sally G. Lewis
and her husband to Edwards, trustee, operated only to
convey the interest of said Sally in the land and her
interest was merely a life estate. R. S., 1879, sec. 669;
*Brumley v. Thomas*, 63 Mo. 390. The deed of trust to
defendant, Edwards, on its face shows the intention of
the parties to convey the interest of Sally G. Lewis
which she acquired by the deed of Charles Lewis, and
not any interest of H. B. Lewis. He was joined in the
execution of the deed, simply to enable her to convey, as
required by statute. Hence the cases of *Howe v. Ways-
man*, 12 Mo. 170, and *Henderson v. Dickey*, 50 Mo. 161,
do not apply to this case. Even though' the conveyance
from Charles Lewis to Sally G. Lewis, may have been in
fraud of the creditors of Henry B. Lewis, yet said deed
was valid as to all other persons, defendants Tracy and
Edwards included. They were not creditors of Lewis at
the time, nor do they occupy the position of subsequent
creditors or purchasers within the meaning of the
statute concerning fraudulent conveyances. The evi-
dence shows that they gave the credit and took the deed
of trust with a full knowledge and notice that the title
to the land was in Sally G. Lewis for life with remainder
to her children, and that Henry B. Lewis had no interest
in said land or power to convey or encumber it. And
the evidence does not show that Sally G. Lewis or her
children or any of them were privy to or had any knowl-
edge of the fraudulent acts of Henry B. Lewis, or were
parties thereto. The evidence fails to show that defend-
ants, Edwards and Shaw, are or can be in any way
affected by any of the fraudulent acts of Henry B.
Lewis. R. S., sec. 2498. The deed of trust from Sally
G. Lewis to defendants, conveyed only and was intended
to convey only the life estate of Sally G. Lewis, and
such life estate, having by the death of Sally G. Lewis
terminated, and the deed of trust not specifying in
terms direct and positive that such life interest alone

was intended to be conveyed, operates now as a cloud upon the title of plaintiffs and their co-tenants; and is such a cloud as a court of equity should remove. *Peirsoll v. Elliott*, 6 Peters 96; 1 John. Ch. 517.

*W. D. Bush* for defendants in error.

(1) The transactions between Charles Lewis and H. B. Lewis, which resulted in the deed to Sally G. Lewis, were in fraud of creditors, and the land was therefore really the property of H. B. Lewis and was subject to his debts both prior and subsequent. *Henderson v. Dickey*, 50 Mo. 161; *Howe v. Waysman*, 12 Mo. 169. (2) The money of Tracy went to discharge a debt whose history makes it a part of the purchase money, and it was so understood when the money was borrowed. (3) If the deed of trust only conveyed the life interest of Sally G. Lewis in the land as maintained by the plaintiff (because of the recitals in Charles Lewis' deed to her limiting her estate to her life), then this trust deed is not a cloud on the title; and being no cloud upon the title the plaintiff's bill was properly dismissed. *Gamble v. St. Louis*, 12 Mo. 617; *Merchants' Bank v. Evans*, 51 Mo. 335; *Dunklin County v. Clark*, 51 Mo. 60; and *Wells v. Weston*, 22 Mo. 384. If the plaintiff's theory of the case is correct, then the deed of trust would not be a cloud upon the title, as both parties claim title through the record, and if the trust deed could only convey the life interest of Sally G. Lewis, she being dead, there could be no cloud to be removed. *Clark v. Covenant Mutual Life Insurance Co.*, 52 Mo. 272; *Graham v. City of Carondelet*, 33 Mo. 262; *Peirsoll v. Elliott*, 6 Peters 98; *Ward v. Dewey*, 16 N. Y. 528.

RAY, J.—It appears from the record in this case that in October, 1864, Charles B. Lewis, being seized in fee of the legal title to certain real estate in Saline county, Missouri, in trust for the use and benefit of his brother, Henry B. Lewis, at the instance of his brother

conveyed the same to Sally G. Lewis, the wife of his said brother, in trust, for the sole and separate use of the wife during her life, with remainder in fee to her children at her death. In March, 1871, Sally G. Lewis and her husband, Henry B. Lewis, conveyed the property *in fee* to the defendant, Edwards, in trust for the defendant, Tracy, to secure $700.00 that day borrowed by them from said Tracy, and for which they, also, gave their promissory note, both these deeds being duly acknowledged and recorded in the proper office at the time.

In 1875, Sally G. Lewis, the wife, died, leaving the plaintiffs, Alice Shaw and Pauline Stevenson, as her only surviving children, and the defendants, Ella, Joseph and Sally Vaughn, as her only grandchildren by a deceased daughter. In 1877, the plaintiffs brought this suit to declare void, as to them, said deed of trust to Edwards for the benefit of Tracy, on the ground that the same was made in fraud of their rights, and is a cloud upon their title to the said real estate, which they claim in fee since the death of their mother, under the provisions of said deed of trust to her from said Charles B. Lewis aforesaid. The evidence in the cause shows that Henry B. Lewis, being insolvent, furnished his brother, Charles, the money with which to purchase said real estate, with the understanding that he would take the title in his own name, and hold it secretly in trust for the said Henry B. Lewis, which he accordingly did; and afterwards, at the instance of said Henry B. Lewis, he conveyed it to his wife, Sally G. Lewis, in trust as aforesaid, for the nominal consideration of $1 and love and affection.

The evidence, also, shows that Chas. B. Lewis, in the purchase of said property, advanced $600.00 of his own money, besides the amount furnished by his brother Henry B. Lewis, as aforesaid, and that, at the time of executing said conveyance to Sally G. Lewis, he refused to deliver the same, unless he was made secure in the

amount so advanced. That to 'secure him, Henry B. Lewis gave him the promissory note of Cottingham & Vaughn for $600.00, whereupon the deed was delivered. That when the Cottingham & Vaughn note became due, Henry B. Lewis and Sally G. Lewis borrowed the money of Smith to pay it, and when the Smith debt fell due, they borrowed money of Edwards to pay it, and when the Edwards debt matured, for the purpose of discharging it, they then borrowed of Tracy the $700.00 for which they gave their promissory note and deed of trust here sought to be declared void, as aforesaid, and with it paid off the debt to Edwards. It further appears that at the time of executing said note and deed of trust they gave Edwards and Tracy a full history of the debt and the title of Sally G. Lewis. The cause was submitted to the court for trial, under the pleadings and evidence, and the court, after hearing and considering the same, found the issues for the defendants and dismissed the plaintiffs' bill, and this is assigned for error by the plaintiffs, who bring the cause here by writ of error.

The question to be decided upon this state of facts is whether the deed from Chas. B. Lewis to Sally G. Lewis under our statute of fraudulent conveyances, sections 2497 and 2498, revision of 1879, and the adjudications thereunder, is to be treated and held as fraudulent and void as against the trustee and beneficiary in the deed of trust from Sally G. Lewis and her husband, Henry B. Lewis. It is conceded, we believe, that our statute is a substantial re-enactment of the English statutes of 13 Eliz., c. 5, and 27 Eliz., c. 4, against fraudulent gifts and conveyances, with some modifications that embody the English construction of these statutes. Our statute, with its modifications, is substantially that of the state of New York, from which it seems to have been taken. According to established rule of construction in such cases, our legislature will be deemed to have enacted the above statute in the sense in which the

statute had been construed by the courts of the country from which it was taken. *Cathcart v. Robinson*, 5 Peters 280; Story's Eq. Juris.; sec. 429; Kent Com., pp. 463, 464. The English statute of 13th Eliz., c. 5, has reference to creditors, while 27th Eliz., c. 4, relates only to purchasers of land. With us, however, they are embodied in the same statute above referred to. The nature, effect and construction of these statutes have been fully considered and discussed by the following (among others) text writers and adjudicated cases, to-wit: 4 Kent Com., p. 463; 1 Smith's Leading Cases, part 1, page 48; 1 Leading Cases in Equity, part 1, page 415; 2 Greenleaf's Cruise on Real Property, pp. 519, 521, 524, 525; 1 Story's Eq. Jur., secs. 426, 432; 4 Vt. 389; 6 Vt. 411; 16 Vt. 209; 3 Bush 343; 4 Cowen 603; 14 Mass. 139; 5 Peters 280; 1 Md. Ch. 507; 2 Gray 447; 3 Wash. on Real Prop., p. 337.

The result of the foregoing authorities may, we think, be fairly stated thus: In England, it is settled that a *voluntary* conveyance, though for a meritorious purpose, will be deemed to have been made with fraudulent views, set aside in favor of a subsequent purchaser for a valuable consideration, even though he had notice of the prior deed. In the United States, while a number of the highest authorities adhere to the English rule, the better American doctrine and weight of authority seems now to be that *voluntary* conveyances of land, *bona fide* made, and *not originally fraudulent*, are valid against subsequent purchasers. In both England and America, however, such a conveyance, if originally made with a *fraudulent intent*, is void, both as to creditors and purchasers, prior and subsequent.

The present deed from Chas. B. to Sally G. Lewis is conceded to have been voluntary and fraudulent when made, and, whether tried by the English or American rule, must be held and treated as fraudulent as against the subsequent deed of trust from Sally G. Lewis and husband to Edwards, as trustee for Tracy,

whether the beneficiary therein is to be regarded as a creditor or purchaser, since, in some sense, he occupies both relations. He became a creditor by loaning the money, and a purchaser, through his trustee, when he received the deed of trust. According to all the authorities, mortgagees and beneficiaries in a deed of trust in the nature of a mortgage are purchasers, within the meaning of 27 Eliz. on fraudulent conveyances, as adopted in this country. Prior adjudications of this court, also, are equally adverse to the doctrine contended for by plaintiff in error, and must be accepted as decisive of this case. In the case of *Henderson v. Dickey*, 50 Mo. 161, it is held that: "If a person who is insolvent or in failing circumstances purchases property with his own money, and has it conveyed by his vendors to a third party, that conveyance is void as to subsequent purchasers of the property from him. * * * The property continues to be his, and if he conveys it his vendee will acquire a good title." The case of *St. Louis Mutual Life Ins. Co. v. Cravens*, 69 Mo. 72, is to the same effect.

In *Howe v. Waysman*, 12 Mo. 169, this court says that: "If a father in failing circumstances purchases property with his own money and has it conveyed to his minor children, it is void as to subsequent purchasers of the property from him, and as to his subsequent creditors. A *bona fide* purchaser for a valuable consideration is protected under the statute of 13 and 27 Eliz., as adopted in this country, whether he purchases from a fraudulent grantor or a fraudulent grantee." In *Gamble v. Johnson*, 9 Mo. 598, it is held "a voluntary conveyance without consideration, or merely for love and affection, made by one who is insolvent, is void as against creditors, although the grantee were ignorant of the insolvency and innocent of the fraud." In *Lillard v. Shannon*, 60 Mo. 522, it is held: "Where a fraudulent purchaser of land, in order to shield himself, puts the title in the third party, having no knowledge of

the fraud, in an action to set aside the sale the plea that the grantee was an innocent purchaser without notice will not avail."

There is a distinction between a deed *merely voluntary* and one made upon a valuable consideration, not necessary here to be considered or determined, as there is no pretense that this conveyance was made upon a *valuable* consideration. The plaintiff, however, contends that, in this case, there has been no subsequent conveyance by the husband, Henry B. Lewis. That he simply joined in the deed as the husband of Sally G. Lewis to enable her to convey as required by statute. That the deed in no sense is his conveyance. That, upon its face, it simply purports to convey her title, which was a life estate only, and is inoperative to pass any interest or estate of the husband, if he had any, and does not purport to do so. That the deed is valid as between the parties thereto and as against the husband, Henry B. Lewis, and all other persons, Tracy and Edwards included, even though void as to the *then* existing creditors of H. B. Lewis. That they, Tracy and Edwards, were not the creditors of H. B. Lewis at the time, and do not occupy the position of subsequent creditors or purchasers, within the meaning of the statute concerning fraudulent conveyances. That they took the deed with notice that the title to the land was in Sally G. Lewis for life, with remainder to her children, and that H. B. Lewis had no interest therein. That the evidence fails to show that Sally G. Lewis, or her children, were privy to or had any knowledge of the fraudulent acts and practices of H. B. Lewis, or were parties thereto, and that the existence of such a deed on the records as the trust deed in question was such a cloud on the title of plaintiffs, as a court of equity would and should remove by declaring the same void and of no effect as to them.

There might be some force in these statements and argument of plaintiffs, if the deed had simply under-

taken to convey or pass the life estate of the wife; but, instead of that, it purports in express terms by the language used, to convey *the fee*. This she did not *have*, and if the doctrine of the above authorities is correct, the fraudulent husband held, and as the granting and operative terms of grant, bargain and sell, used in the deed, were appropriate and competent to pass whatever title he held, the legal title so held by him did pass by the trust deed in question. The face of the deed, therefore, does not warrant the construction placed on it by plaintiffs. If the deed to Sally G. Lewis had originally been made in good faith and not contrived in the beginning, for a fraudulent purpose, as it is admitted to have been, then there might have been no resulting trust, or legal estate remaining in the husband, to pass by the trust deed so executed. According to the authorities, Tracy, for whose benefit the trust deed was made, occupied the position of both creditor and purchaser, subsequent, it is true, but under the authorities as much protected as if he had been a prior creditor.

While there may be no direct or positive proof that the wife was an active participant in the fraudulent contrivances and practices of the husband, by which the legal paper title was vested in her, yet we think it quite clear, from the facts and circumstances in proof, that she was privy to, and had knowledge of the object and purposes for which the deed from Chas. B. Lewis to her was made. Among other things, the agreed abstract of the evidence prepared by plaintiffs' attorneys, states that at the time H. B. and Sally G. Lewis borrowed the money in question, they gave both Edwards and Tracy "a full history of the debt and the title of Sally G. Lewis." How could she have been a party to such a combination if she was not cognizant of the facts? She being trustee, by the terms of the deed, of the remainder for the children, her knowledge, under the circumstances, was their knowledge. If this were not so, yet, under the authorities, their want of knowledge, or innocence of fraud, does not

validate a conveyance having its origin in unquestioned, wilful and positive fraud. For these reasons, there was no error in the dismissal of the plaintiffs' bill by the circuit court, and its judgment is therefore affirmed.

All concur, except Hough, C. J., and Henry, J., who dissent; Judge Norton concurring in the result.

Hough, C. J., and Henry, J., dissenting.—As we do not concur in the opinion delivered herein by our associates, it is proper, inasmuch as it is a question of great practical importance, that we briefly state the grounds of our dissent.

By our statutes in relation to fraudulent conveyances, sec. 1, Wag. Stat., page 279, "Every deed of gift and conveyance of goods and chattels, in trust, to the use of the person so making such deed of gift or conveyance, is declared to be void as against creditors existing and subsequent, and purchasers."

Sec. 2 provides that: "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, * * * made or contrived with the intent to hinder, delay or defraud creditors, * * * or to defraud or deceive those who shall purchase the same lands, * * * shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void."

By sec. 3 it is declared that: "No such conveyance or charge shall be deemed void, in favor of a subsequent purchaser, if the deed or conveyance shall have been duly acknowledged, or proved and recorded, or the purchaser have actual notice thereof at the time of the payment of the purchase money, unless it shall appear that the grantee in such conveyance, or person to be benefited by such charge, was party or privy to the fraud."

In determining the case at bar the first section need not be considered. It relates exclusively to deeds of gift

and conveyances of goods and chattels to the use of the person making such deed. The second section embraces all conveyances, whether of lands or goods and chattels, made with either of the fraudulent intents specified therein, whether made on a valuable consideration or not. By its express terms a conveyance made with the intent to deceive or defraud subsequent purchasers is void only as to a subsequent purchaser who is deceived. The third section is emphatic, that if the fraudulent deed has been duly recorded, or the subsequent purchaser has actual notice thereof, it shall be good against him, unless it appear that the grantee in the first conveyance was a privy to the fraudulent intent of his grantor. Proof that the grantor in the first deed intended by it to defraud his creditors, and that the grantee was privy to it, does not prove the intent to defraud subsequent purchasers. It does not even afford ground for such an inference, but the contrary, and so it has been held in a number of well considered cases. In *Stevens v. Morse*, 47 N. H. 535, the court observes: "An intent to defraud creditors is not identical in law with an intent to defraud subsequent purchasers. The statutes of 13th and 27th Elizabeth were aimed at different ends. If 'the design of passing each statute' had been the same, the latter statute would have been deemed unnecessary, and therefore would never have been enacted. Neither is the existence of one of these statutes a conclusion, nor, as we think, a *prima facie* presumption from proof of the existence of the other." See Roberts on Voluntary and Fraudulent Conveyances, 51; 19 Wendell 516; 5 Watts 373.

In the case at bar no intent to deceive or defraud purchasers was alleged or proved. The subsequent purchaser had actual notice of the prior fraudulent conveyance, and if in such case he is held to have a better title than the children to whom a remainder in fee simple was granted by the first deed, and who cannot be said to have been privy even to the intent of the grantor to

defraud his creditors, the sections above noticed had no operation whatever as against the fraudulent grantor, who may again and again sell the property and place the proceeds beyond the reach of his creditors. But, if, as is held in the majority opinion, a subsequent purchaser with notice gets a better title than the grantee in the fraudulent conveyance, what becomes of the rights of the creditors, if before they move against the first grantee the grantor sell and convey to a subsequent purchaser? If the latter gets a title good against them, while one fraudulent conveyance would not defeat creditors, two will. On the contrary, if his title is assailable by creditors, it must be because conveyed in fraud of their rights, and the fraudulent grantor may a third time sell and convey, and so on *ad infinitum*. He could not set aside either conveyance, or recover the property from the fraudulent grantee, and yet may transfer the title and defeat all prior conveyances and fraudulent sales. Such law offers a premium for fraud, and we must resort to our criminal law for a check upon such villainy as might be perpetrated under the construction of our statute against fraudulent conveyances.

In support of our views we refer to 47 N. H. 532; 6 Blackf. 391; 8 Iredell Law 340; 5 Watts 378; 11 Texas 149, 478. A subsequent purchaser with notice actual or constructive can hold the land only by proving a specific intent on the part of the grantor to deceive or defraud purchasers of said land, and that the grantee was privy to such fraudulent intent of the grantor.